CITY OF BELOIT, Petitioner-Respondent, v. KALLAS, and others, Intervenors-Appellants: DEPARTMENT OF NATURAL RESOURCES, Respondent.

*No. 75-374. Argued January 4, 1977.—
Decided February 15, 1977.*
(Also reported in 250 N. W. 2d 342.)

62

For the appellants there were briefs and oral argument by *Melvin L. Goldberg* of Madison.

For the respondent there was a brief by *Daniel T. Kelley* and *Hansen, Eggers, Berres & Kelley, S. C.* and oral argument by *Daniel T. Kelley*, all of Beloit. A brief amicus curiae was filed by *Jean G. Setterholm*, legal counsel, and *Paul J. Swain*, assistant legal counsel, of Madison, for League of Wisconsin Municipalities.

ROBERT W. HANSEN, J. The challenge here is to the constitutionality of sec. 144.07 (1m), Stats., which provides:

*"(1m)* An order by the department for the connection of unincorporated territory to a city or village system or plant [NOTE: Reference is to a sewerage system or sewage or refuse disposal plant.] under this section shall not become effective for 30 days following issuance. Within 30 days following issuance of the order, the governing body of a city or village subject to an order under this section may commence an annexation proceeding under s. 66.024 to annex the unincorporated territory subject to the order. If the result of the referendum under s. 66.024 (4) is in favor of annexation, the territory shall be annexed to the city or village for all purposes, and sewerage service shall be extended to the territory subject to the order. If an application for an annexation referendum is denied under s. 66.024 (2) or the referendum under s. 66.024 (4) is against the annexation, the order shall be void. If an annexation proceeding is not commenced within the 30-day period, the order shall become effective."

The constitutional challenge here raised is not to the conferring of power on a city or village to attempt annexation where in the absence of a connection order of

the DNR there would be no such power.[1] Rather the challenge raised is to the provision in the statute which voids the connection order if the electors in the town area affected by the order reject annexation to the city.[2] Appellants contend this provision permits local units of government to make decisions which may conflict with state interests.

Specifically, appellants contend the voiding-by-referendum provision permits local electors or local units of government to exercise too much control over ground water pollution by voiding the DNR connection order. Appellants claim such pollution is a matter of statewide, not local concern, or, if both, paramountly of statewide concern. Under our state constitution, the power to make laws is vested in the state legislature.[3] Counties are constitutionally empowered to exercise powers of "local, legislative and administrative character."[4] Cities and villages are empowered to "determine their local affairs and government,"[5] subject, however, "to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village."[6] Thus, as to such matters of statewide concern, the power of cities and villages is constitutionally made subservient to legislative enactments.

In determining the constitutionally apportioned powers between state and local units of government, appellants

[1] App. Reply Brief, page 9, stating: "To the extent that sec. 144.07(1m), Stats., confers power to attempt annexation where otherwise there would be no power, we have no quarrels or arguments."

[2] *Id.* at page 9, stating: "It is only to the extent that the statute permits the voiding of lawful orders issued by the executive branch of the state government by local electors that we have challenged this law."

[3] Art. IV, sec. 1, Wis. Const.

[4] Art. IV, sec. 22, Wis. Const.

[5] Art. XI, sec. 3, Wis. Const.

[6] *Id.*

concede it is constitutional for local units of government to exercise power, pursuant to defined procedures, over matters of statewide concern where there is no potential conflict between the two levels. For example, our court has held it constitutional for local units of government to (1) engage in industrial development projects;[7] (2) to establish and enforce shoreland zoning ordinances;[8] and (3) to establish and enforce safety ordinances dealing with the use of navigable waters.[9]

However, appellants contend that, under sec. 144.07 (1m), there is a potential conflict between local interests, such as preservation of a viable tax base, and statewide concerns, such as public health, and the quality of navigable and other surface waters and ground water. Thus locating the local interests and statewide interest affected by sec. 144.07 (1m), appellants see the test to be applied in determining the validity of delegation of legislative power to be that of which interest is paramount.[10] Under that approach, the narrow question left to be resolved would be whether the voiding-by-rejection-of-annexation provision was "assigning a right to block advance of paramount interests."[11]

Following this reasoning pollution control is clearly a matter of statewide concern[12] and the interests on the

[7] *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis.2d 32, 205 N.W.2d 784 (1973).

[8] *Just v. Marinette County*, 56 Wis.2d 7, 201 N.W.2d 761 (1972).

[9] *City of Madison v. Tolzmann*, 7 Wis.2d 570, 97 N.W.2d 513 (1959).

[10] *Muench v. Public Service Comm.*, 261 Wis. 492, 515g, 53 N.W.2d 514, 55 N.W.2d 40, 43 (1952).

[11] *Menzer v. Elkhart Lake*, 51 Wis.2d 70, 78, 186 N.W.2d 290, 294 (1971).

[12] See: Sec. 144.025(1), Stats., in part providing: ". . . Continued pollution of the waters of the state has aroused widespread public concern. It endangers public health and threatens the general welfare. A comprehensive action program directed at all present and potential sources of water pollution whether

other side of the scale are matters of purely local concern relating to the tax base. As such, it would not be difficult to find that voiding of a sewerage connection order to serve such purely local concerns "blocked" advancement of the paramount interest involved.

However, more is involved in the enactment of sec. 144.07(1m) than a legislative effort to harmonize a single matter of statewide concern with matters of purely local concern. Also to be put on the scales in reviewing this statute is a second matter of statewide concern, to wit, urban development or expansion via annexation. The statute deals with and provides for annexation by approval of electors of the affected area as well as with the sewerage system connection order to aid pollution control. Our court has held that "Consolidation, as annexation, is a matter of state-wide concern."[13]

We thus have in the challenged statute, not one matter of statewide concern, but two such matters. It is two competing public policies in areas of statewide concern which the legislature sought to weigh, balance and harmonize. Speaking generally, our court has indicated a judicial reluctance to interfere with such legislative balancing of competing public policies, stating: "We are

home, farm, recreational, municipal, industrial or commercial is needed to protect human life and health, fish and aquatic life, scenic and ecological values and domestic, municipal, recreational, industrial, agricultural and other uses of water. The purpose of this act is to grant necessary powers and to organize a comprehensive program under a single state agency for the enhancement of the quality management and protection of all waters of the state, ground and surface, public and private. To the end that these vital purposes may be accomplished, this act and all rules and orders promulgated pursuant thereto shall be liberally construed in favor of the policy objectives set forth in this act. . . ."

[13] *Milwaukee v. Sewerage Comm.*, 268 Wis. 342, 355, 67 N.W.2d 624, 631 (1954).

uneasy with this balancing and weighing concept of the judicial role in testing the constitutionality of a police power statute."[14] The connection order of the DNR and the statute under which it was issued, sec. 144.07 (1m), are within the area of proper exercise of police power. Once within this area our court has held ". . . it is for the legislature to determine what regulations, restraints or prohibitions are reasonably required to protect the public safety, . . ."[15] and adding, " '. . . such questions [as to the justice, wisdom, policy, necessity or expediency of a law which is within its power to enact] are not open to inquiry by the courts. . . .' "[16]

Our court has dealt specifically with the crunch between these two matters of statewide concern—urban development and pollution control. It did so in 1969 in the case of *In re City of Fond du Lac.*[17] That was an action on behalf of a town by minority electors residing outside of a populous city to establish, pursuant to sec. 66.20, Stats., a metropolitan sewerage district to include the entire territory of both municipalities bordering on a lake. We found in that case an unlawful delegation of legislative authority to the judiciary.[18]

This court there discussed the balancing of the urban development matter with the competing matter of making available services such as water supply or sewage treatment, stating:

"All of the major cities and most of the smaller cities and villages in Wisconsin are surrounded by fringe areas with population densities at or near the normal city level. Even though these fringe areas appear to be a part of

[14] *Bisenius v. Karns,* 42 Wis.2d 42, 54, 165 N.W.2d 377, 383 (1969), appeal dismissed 395 U.S. 709 (1969).

[15] *Id.* at 54, 165 N.W.2d at 383.

[16] *Id.* at 54, n. 21, 165 N.W.2d at 383, n. 21, quoting 16 C.J.S., *Constitutional Law,* pages 775, 776, sec. 154.

[17] 42 Wis.2d 323, 166 N.W.2d 225 (1969).

[18] *Id.* at 333, 166 N.W.2d at 229.

the city, they are governed, taxed and provided services by the town. No populated fringe area may become part of the city until the majority of the electors and/or property owners in a particular area desire to annex. Cities and villages invariably offer a higher level of services to their citizens as compared to the surrounding town, and almost without exception it follows that costs of municipal services are correspondingly higher. The argument of the cities is that if the surrounding areas can attain the desired city services without becoming a part of the city, the growth of the cities is likely to be forever stifled, and the residents of metropolitan areas will be forever carrying an inequitable percentage of the tax load."[19]

We recognized in the *Fond du Lac Case* the coexistence of two matters of statewide concern: (1) The providing of a single vital public service, such as water or sewage disposal, to the area surrounding a city or village, and (2) the growth or expansion of cities or villages, via annexation, bringing all municipal services to areas annexed. This court did not apply the test of paramountcy in that case, *i.e.*, we did not find one of the matters involved to be paramount and blocking consideration given the other.

Of what we there termed "the hidden problem presented" balancing the two competing statewide interests —we held: "It is not to be solved by judicial determination."[20] Noting the legislature had already stated that a metropolitan sewerage district is a legitimate solution to an areawide pollution problem, we concluded: "Thus the court is foreclosed from making any judgment as to how the formation of a sewerage district will affect the expansion of municipalities in the future."[21]

In the *Fond du Lac Case* the matter of accommodating or providing for either or both of the two matters of

[19] *Id.* at 333, 166 N.W.2d at 229.

[20] *Id.* at 333, 166 N.W.2d at 229.

[21] *Id.* at 333, 166 N.W.2d at 229.

statewide concern involved—providing sewage disposal service and providing for municipality expansion—was left to the legislature, not the courts, to resolve. The legislature was invited to decide the appropriate public policy as to the coexistence of the two matters of statewide concern.

Given this invitation to act, the legislature took steps that led to the enactment of the present sec. 144.07 (1m), Stats. In the 1969 legislative session, Senate Bill 758 was introduced dealing with this exact problem. While it was not enacted into law at that session, it was assigned to the local government committee of the state senate for study. Following public hearings in 1970, that committee directed the legislative council to draft an alternative measure for consideration. The alternate proposal submitted by the council became Senate Bill 50 which was enacted into law, becoming ch. 89, Laws of 1971, creating the present sec. 144.07 (1m), Stats.

Thus it was at the invitation of this court that the legislature acted to balance and accommodate two matters of statewide concern in a single piece of legislation. Inviting the effort to be made does not assure the constitutional validity of the result reached. However, we find no constitutional infirmity in the response of the legislature to the invitation to act. We need not and do not comment on whether the accommodation of two conflicting matters of statewide concern, contained in sec. 144.07 (1m), is the best of all possible accommodations or compromises.

We do hold that no constitutional proscription was violated in the state legislature providing that an administrative agency could order the providing of a sewage disposal service to an area outside a city or village by such city or village, with such connection order to be voided if the residents of the area affected voted not to be annexed to the city or village ordered to provide the single service.

Alternatively, appellants submit that, even if constitutional in other senses, sec. 144.07(1m) "would have to fall since it does not guarantee that electors will be apprised of the consequence of their decision when exercising their power thereunder."[22] In effect, appellants are contending the town's electors did not know that a "No" vote cast against annexation with the city had the effect of voiding the DNR connection order. There is nothing in this record to support such conclusion, and no legal authority we can locate for indulging such assumption. In fact, the presumption is that required publicity was given to a referendum measure before the election was held.[23] (In the case before us, that would be before the signed petitions were received.)

A township vote on becoming annexed to a contiguous populous community does not recommend itself as the type of referendum vote in which those voting would likely be unconcerned or uninformed of the consequences of their vote. The thirty-day limit on commencement of annexation proceedings by the city following issuance of a connection order, as provided in sec. 144.07(1m) and here complied with, insures a temporal proximity that makes evident the connection between the DNR order and the annexation proceeding. Moreover, the proceedings leading to both connection order and annexation petition were not conducted in secret or behind closed doors. There were numerous hearings and notices to the public, the town and the affected residents.[24] No authority at law and no basis in fact is here suggested for a requirement, on constitutional grounds, of greater notice of or closer association between the two procedures—one for securing the completion order and the

[22] App. Brief at page 23.
[23] See: 82 C.J.S., Statutes, sec. 135, page 236.
[24] As required by secs. 144.07(1m), 66.024(1)(b), 144.537, 227.13 and 227.14, Stats.

other for voting on annexation—than was here required and provided.

For the foregoing reasons, the constitutionality of sec. 144.07 (1m), Stats., is therefore upheld.

*By the Court.*—Judgment affirmed.