TOWN OF HALLIE, a Wisconsin town, Plaintiff-Appellant,

v.

CITY OF CHIPPEWA FALLS, a Wisconsin municipal corporation, Defendant-Respondent-Petitioner.†

Supreme Court

*No. 80–1406.  Argued November 30, 1981.—*
*Decided January 18, 1982.*

(Also reported in 314 N.W.2d 321.)

† Motion for reconsideration denied, with costs, on March 15, 1982.

For the defendant-petitioner there were briefs by *B. James Colbert* and *Wiley, Rasmus, Colbert, Frasch & Norseng, S.C.*, of Chippewa Falls, and oral argument by *B. James Colbert.*

For the plaintiff-appellant there was a brief by *Claude J. Covelli, Walter Kuhlmann* and *Boardman, Suhr, Curry & Field,* attorneys, of Madison, and *David H. Raihle,* of counsel, of Chippewa Falls, and oral argument by *Mr. Covelli.*

BEILFUSS, C. J. This is a review of a decision of the court of appeals which reversed part of a judgment of the Circuit Court for Chippewa County, ROBERT F. PFIFFNER, Judge. The part of the judgment reversed by the court of appeals dismissed the plaintiff's second cause of action for failure to state facts upon which relief may be granted.

Both the plaintiff and the defendant are municipalities located in Chippewa County, Wisconsin. The plaintiff, Town of Hallie, is adjacent to the defendant, City of Chippewa Falls. Chippewa Falls owns and maintains a sewage treatment plant capable of treating more sewage than is presently generated within the city. The town has no sewage treatment or collection facilities. The residents of at least a part of the town want to utilize the city's sewer system.

The town proposed to construct its own sewage collection system and connect it to the city system for treatment. The city rejected the proposal and, in turn, offered to allow the town to use its treatment facility only if the town agreed to allow the city to provide for the collection of sewage and other municipal services. The town would not agree. A portion of the town was then annexed to the city.

The plaintiff's complaint stated two claims against the defendant city. The first claim alleged that the ordinance enacted by the city which annexed a portion of the town was arbitrary, capricious and constituted an abuse of discretion. The trial court upheld the validity of the city's annexation ordinance. This determination was affirmed by the court of appeals and this court denied the town's cross-petition for further review.

In its second claim the town alleged that the city had conditioned provision of waste treatment service on the acceptance of other services such as fire and police protection and street services. This anti-competitive tie-in behavior was alleged to violate sec. 133.03, Stats. 1979–80, the Wisconsin Antitrust Law. The city moved to dismiss this second claim and the trial court granted the motion, without leave to replead. The town drafted an amended complaint and filed a motion for leave to replead.[1] In the amended complaint the town alleged that sewage treatment was composed of three functional levels—collection, transportation, and treatment of sewage. The city allegedly has a monopoly on the actual sewage treatment services, not only within the city limits but within the geographic area constituting the town as well. The town alleges it is a potential competitor with the city to provide sewage collection and transportation services in the town. The city refused to negotiate with the town for treatment services and attempted to monopolize collection and transportation services within the annexed portion of the town. The town further alleged that the city had offered to provide sewage treatment services to the town, but only on the condition that the users also accept the city's collection services and other city services such as fire, police, and street services. The

[1] The record is not clear as to what disposition was made of this motion; however, the court of appeals considered the amended complaint as properly before it and we shall do likewise.

town claims this tying of services prevented it from being able to compete with the city in the market for sewage collection services. As a result, a not insubstantial amount of commerce had been restrained.

The court of appeals reversed the dismissal of the plaintiff's second claim, holding that the allegations of the amended complaint did state a cause of action under the Wisconsin Antitrust Act, ch. 133, Stats. 1979–80. The court of appeals concluded that tying the provision of one type of service to the purchase of other services is illegal under the federal Sherman Act and that because Wisconsin's antitrust law is based on the Sherman Act, the town's allegations of such tying behavior did state a cause of action under state antitrust law. The court rejected the argument that a city should be exempt from the antitrust law because its actions were authorized by the state. The court of appeals further concluded the legislature did not create such an exemption and it declined to establish one. This court granted review of the portion of the court of appeal opinion dealing with the antitrust allegations by the town.

For purposes of this review, we must assume that the plaintiff would be able to prove facts in support of its allegations. As we stated in *Grams v. Boss*, 97 Wis. 2d 332, 351–52, 294 N.W.2d 473 (1980), "the complaint should be dismissed as legally insufficient only if 'it is quite clear that under no conditions can the plaintiff recover.' A claim should not be dismissed 'unless it appears to a certainty that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations.'" Thus we assume that the town is a potential competitor with the city in the provision of sewage collection services in the area of the town and that the city is tying the provision of treatment services to the acceptance of other city services. The implication in this action seems that, in effect, the city refused to

provide sewage treatment services to the portions of the town unless the inhabitants of the portions agreed to become annexed to the city. We now hold that such tie-in behavior by the city would not be illegal under the state antitrust law and, therefore, the town's amended complaint fails to state a cause of action.

Sec. 133.03(1), Stats. 1979–80, is Wisconsin's version of the Sherman Act. It provides:

"133.03 **Unlawful contracts; conspiracies.** (1) Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal. Every person who makes any contract or engages in any combination or conspiracy in restraint of trade or commerce may be fined not more than $100,000 if a corporation, or, if any other person, $50,000, or be imprisoned for not more than 5 years, or both."

Cities are "persons" covered by sec. 133.03(1). Formerly it was unclear whether cities were covered, but sec. 133.02(3) specifically states that cities are included in the term "person" in sec. 133.03(1).

The city argues that it should be exempt from the state antitrust law under the doctrine of *Parker v. Brown,* 317 U.S. 341 (1943). This case arose under the Sherman Act and established an exemption from federal antitrust law for "state action or official action directed by a state. . . ." 317 U.S. at 351. The *Parker* decision rested on general principles of federalism involving the relationship of the federal government to the sovereign states, and on the specific constitutional limits on federal power contained in the tenth and eleventh amendments.[2] These principles are not present in this case. The relationship between the federal government and the

[2] *See Note: "Parker v. Brown* Revisited: The State Action Doctrine After *Goldfarb, Cantor* and *Bates,"* 77 Columbia Law Review 898, 899, n. 6 (1977).

states is not parallel to the relationship between the state government and the cities. Cities are creatures of the state, derive their power from it, and are not recognized as independent sovereigns. *Madison v. Hyland, Hall & Co.,* 73 Wis. 2d 364, 372, 243 N.W.2d 422 (1976). The concern in *Parker* and recent United States Supreme Court cases applying it[3] has to do with potential conflicts between the laws of two different sovereigns—federal and state governments.

By contrast, the present case involves a conflict between the state laws dealing with municipalities and the state antitrust law. The rationale behind the *Parker* exemption is not applicable to this type of case. As explained by Milton Handler in the Columbia Law Review, the overriding issue in cases like this one is "the reconciliation of two ostensibly conflicting enactments of a *single* sovereign. . . . The job quite simply is to ascertain, as best as can be, the intent of the legislators."[4]

This court has dealt with conflicts between the state antitrust law and other state statutes in *Reese v. Associated Hospital Service,* 45 Wis. 2d 526, 173 N.W.2d 661 (1970), and in *Grams v. Boss,* 97 Wis. 2d 332, 294 N.W. 2d 473 (1980). These cases established the rule that an entity cannot be exempted from the state antitrust statute unless the conduct of the entity is within the express provisions of the conflicting statute and then only if its conduct is in furtherance of the conflicting statute's legislatively stated purpose. *Reese* at 532–33, and *Grams* at 342. We reiterate this rule for private entities, but we believe this rule may be overly restrictive if applied

---

[3] *See e.g., Goldfarb v. Virginia State Bar,* 421 U.S. 773 (1975); *Bates v. State Bar of Arizona,* 433 U.S. 350 (1977); *Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389 (1978); *California Liquor Dealers v. Midcal Aluminum,* 445 U.S. 97 (1980).

[4] Handler, "Antitrust—1978," Columbia Law Review, 1363, 1378 (1978).

to municipalities. When dealing with actions by municipalities, we hold that the test as to the applicability of the state antitrust law is whether the legislature intended to allow municipalities to undertake such actions. Such a determination involves an analysis of the home rule powers of cities, the type of conduct undertaken by a city in a particular instance, and the general statutory framework set up by the legislature in the particular field. In this case we conclude that the legislature intended to allow a city to tie the provision of sewage services to an area outside the city to the acceptance by the area's inhabitants of the city's other services.

In reaching this conclusion we initially note that cities are given broad home rule powers by the state constitution and by the statutes. Sec. 62.11(5), Stats. 1979–80, provides:

"(5) *Powers.* Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."

The effect of this statute is made clear in *Wisconsin's Environmental Decade, Inc. v. DNR*, 85 Wis. 2d 518, 532, 271 N.W.2d 69 (1978), where we stated:

" ' "Prior to the enactment of this section by ch. 242, Laws 1921 (revision of City Charter Law) cities possessed specified powers. Their powers were limited to those expressed in the statutes and those necessarily implied by the expressed powers. All other powers were

regarded as having been denied. That rule was changed by said chapter. Since then cities possess all powers not denied them by the statutes or the constitution. Instead of the powers being specified, as formerly, the limitations are now enumerated." ' "

The argument is made, however, that the state constitution does deny cities the power to violate the antitrust law because the antitrust law is a legislative enactment of statewide concern. Sec. 3, Art. XI of the Wisconsin Constitution allows cities to determine their ". . . local affairs . . . subject only to this constitution and to such enactments of the legislature of state-wide concern. . . ." Clearly the antitrust law is a legislative enactment of state-wide concern. But this fact alone does not prevent a city from exercising its general home rule powers to provide for an area of legitimate local concern. As we said in *Wisconsin's Environmental Decade Case, supra:*

". . . it should be understood that an otherwise legitimate exercise of this 'general charter' power by the city is not rendered invalid and constitutionally defective merely because it deals with a matter of state-wide concern. Indeed, sec. 62.11 (5), Stats., would be a nullity if it were construed to confer on municipalities only that authority which related to 'local affairs' since that power is already constitutionally guaranteed by the home-rule amendment." 85 Wis. 2d at 533.

We do not hold that a city may ignore the state antitrust law in all cases merely by relying on its home rule powers. There are certainly limits to a city's home rule powers, especially when they conflict with matters of state-wide concern. But in this instance, analysis of the legislative enactments dealing with cities and their powers to provide sewage services convinces us that the antitrust laws do not apply to the defendant's alleged conduct.

Although the statutes do not specifically so provide, it seems that the legislature viewed annexation by the

city of a surrounding unincorporated area as a reasonable quid pro quo that a city could require before extending sewer services to the area. In sec. 66.069(2)(c), Stats., the legislature provided that a city may fix the area outside its boundaries in which service will be provided and has no obligation to serve beyond that area.[5] Additionally, sec. 144.07(1m) provides that the DNR may order a city to connect its sewer service to an adjoining unincorporated area in certain cases. If faced with such an order, however, a city may commence a proceeding to annex the area to which it is required to provide service. If the inhabitants of the area reject the annexation by referendum, then the DNR order is void and the city is not required to provide service to the area.[6]

---

[5] "66.069   Charges; outside services. . . .

"(2)(c) Notwithstanding s. 196.58(5), each village or city may by ordinance fix the limits of such service in unincorporated areas. Such ordinance shall delineate the area within which service will be provided and the municipal utility shall have no obligation to serve beyond the area so delineated. Such area may be enlarged by a subsequent ordinance. No such ordinance shall be effective to limit any obligation to serve which may have existed at the time the ordinance was adopted."

[6] "144.07   Joint sewerage systems. . . .

"(1m) An order by the department for the connection of unincorporated territory to a city or village system or plant under this section shall not become effective for 30 days following issuance. Within 30 days following issuance of the order, the governing body of a city or village subject to an order under this section may commence an annexation proceeding under s. 66.024 to annex the unincorporated territory subject to the order. If the result of the referendum under s. 66.024(4) is in favor of annexation, the territory shall be annexed to the city or village for all purposes, and sewerage service shall be extended to the territory subject to the order. If an application for an annexation referendum is denied under s. 66.024(2) or the referendum under s. 66.024(4) is against the annexation, the order shall be void. If an annexation proceeding is not commenced within the 30-day period, the order shall become effective."

While the facts of the present case are clearly not covered by this statute because no DNR order is involved, this statute is still helpful in indicating that the legislature seems to view annexation as an appropriate prerequisite to the provision of sewage service outside the limits of a city. This seems reasonable because establishing and maintaining sewage treatment facilities can be a very substantial financial burden upon the city taxpayers and residents. If an area is to have the benefit of such services, it may be appropriate for it to be annexed in order to add to the city's tax base and help pay for the cost of providing such services.

The city, in providing sewage services, is performing a governmental rather than a proprietary service. Its primary objective is to help ensure health and sanitation for its residents. This service resembles other governmental services such as police and fire protection which are monopolies for the public good. There is no profit motive involved and a monopoly exercised by the city is more appropriate than competition in the furnishing of such public services, even though, as here, the service can be extended beyond the geographical boundaries of the city.

Thus we hold that the legislature did not intend that a city should be liable under the state antitrust law for the kinds of acts allegedly done by the defendant in this case. Given a different set of circumstances, a city may still be liable for antitrust violations. But in this case we hold that the court of appeals erred in overturning the trial court's dismissal of the plaintiff's second claim.

*By the Court.*—The decision of the Court of Appeals is reversed in part.