CARL HIZEL & SONS, INC.; Black Diamond Land & Cattle Co., d/b/a Gerlach Roll-Off Services, Inc.; Gerlach Rubbish Removal; Trash Unlimited; Supreme Disposal Service, Inc.; B and H Sanitation Service; Ginther Rubbish Removal; Northwest Disposal Co.; Disposal, Inc.; and Blue Barrel Disposal, Inc., Plaintiffs,

v.

BROWNING–FERRIS INDUSTRIES, INC.; Browning-Ferris Industries of Colorado, Inc., d/b/a BFI Waste Systems, and Landfill, Inc., Defendants.

No. 83–K–1743.

United States District Court, D. Colorado.

Jan. 4, 1985.

Robert F. Hanley, Janet C. Perriman, Alan K. Palmer, Philip D. Bartz, Morrison & Foerster, Denver, Colo., for plaintiffs.

John B. Moorhead, Baker & Hostetler, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiffs are eleven independently owned companies in the business of picking up and hauling away trash. Defendants, a Delaware corporation and two of its wholly owned subsidiaries are in the same business, and are alleged to own and operate four of the seven landfill dumping sites in the Denver, Colorado metropolitan area. These sites include the two most conveniently located and commercially useful landfill dump sites in the subject area. The essence of plaintiffs' allegations is that defendants, by virtue of holding licenses to operate the above mentioned landfill dump sites, have subjected plaintiffs to a classic "price-squeeze"—simultaneously charging

lower prices in the "retail" trash hauling markets adjacent to defendants' dump sites and charging plaintiffs higher prices to use defendants' dump sites. Plaintiffs reason that the price squeeze substantially raises the costs and lowers the revenues of BFI's competitors in the trash hauling market and that BFI avoids the higher costs because it is in effect charging itself to use its own landfills whenever BFI trucks pay to dump at BFI landfills—an allegedly increasingly frequent occurrence done with the specific intent to monopolize the trash hauling market, 40 percent of which BFI is alleged to hold already. Jurisdiction lies in this court pursuant to 15 U.S.C. §§§ 4, 15 and 26 and pursuant to 28 U.S.C. § 1337.

Before me are 1) defendants' motion for summary judgment; 2) plaintiffs' motion for partial summary judgment on the issue of the *Parker* state action exemption; and 3) plaintiffs' motion pursuant to Rule 11 of the Rules of Civil Procedure for expenses and attorneys' fees incurred in rebutting an allegedly frivolous and groundless defense.

The first two motions hinge upon the same issue—whether BFI's activities in the Denver metropolitan area were regulated by the State of Colorado, acting through Adams, Jefferson and Boulder Counties, in such a way as to qualify the defendants for the state action exemption from federal antitrust laws enunciated in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

The *Parker* decision rested on basic principles of federalism. The *Parker* court determined that neither the express language nor the legislative history of the Sherman Act evidenced an intention on the part of Congress to restrain state action. *Id.* at 350, 63 S.Ct. at 313. In *Community Communications v. City of Boulder*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), the City of Boulder was denied a state action exemption in the absence of a clearly articulated and affirmative expression of the State of Colorado's intention to sanction anti-competitive effects in the cable television industry.

■ In the trash hauling and dumping industry, Colorado regulates the dumping industry under the Solid Waste Disposal Sites and Facilities Act, C.R.S. 30–20–101 *et seq.* Although formerly state regulated, the waste hauling industry was deregulated by the Colorado legislature in 1980. *See* C.R.S. 40–1–102(3), which removed trash haulers from P.U.C. jurisdiction, giving the counties authority, per C.R.S. 30–15–401, to regulate health and safety aspects of the trash hauling industry. The counties' only authority, *qua* economics of trash hauling, is to assess a licensing fee with which to offset regulatory and enforcement costs, and even then only within the unincorporated areas. C.R.S. §§ 30–15–401(1)(a)(IV) and (a)(VI). Finally, trash hauling is expressly a matter of purely local concern, § 401(1), and therefore *wholly* outside the state's jurisdiction to regulate. Thus, even though the state can act through the counties, see for example *Colorado Investment and Realty Company v. Riverview Drainage District*, 83 Colo. 468, 266 P. 501, 502 (1928), the actions of the county are not the state's acts, nor can they be so construed, when the state declares the matter to be of local concern. It is this lack of a basis for defendants' claim to a *Parker* exemption that underlies plaintiffs' Rule 11 motion.

The applicability of the *Parker* doctrine to the defendants' operation of landfill dump sites is not so easily determined. Under Colorado's Solid Waste Disposal Sites and Facilities Act, *supra*, considerable attention is given to the health and safety considerations of landfill operations, yet the only purely economic utterance, C.R.S. § 30–20–115, is that "... Any county is also authorized, after a public hearing, to fix, modify, and collect service charges from users of solid waste disposal sites and facilities for the purpose of financing solid waste management in that county." This provision of section 115 has been interpreted by the counties to mean that a county has authority to set the fees and approve rate hikes charged to the users of the landfills licensed by the county.

The depositions on file in this case, of county officials who report to the various county commissioners responsible for the ultimate decisions on the rate hikes, reveal that the several counties interpret the mandate quite differently. Boulder County, for example, goes the full nine yards, so to speak, —requiring audited financials and holding a firm line on any increases until all accounting ambiguities are clarified to the county's satisfaction. While Boulder County takes on the responsibility of regulating the rates charged at the landfills with a thoroughness reminiscent of the P.U.C. gamut formerly required of applicants for such rate hikes, the other two counties follow a more casual procedure. For example, in Adams County, a rate hike requested on October 19, 1982 was granted October 20, 1982 without either a public hearing or the formal approval of the Board of County Commissioners.

It is against the background of these facts that the state exemption claim must be examined. Defendants' rely most heavily on two cases—*Town of Hallie v. City of Eau Claire,* 700 F.2d 376 (7th Cir.1983), *cert. granted,* — U.S. ——, 104 S.Ct. 3508, 82 L.Ed.2d 818 (1984), (holding that legislative intent to consider anticompetitive effects of municipal or state regulation as reasonable or foreseeable consequences of regulation can be inferred in the absence of its expression); and *Pueblo Aircraft Service Inc. v. City of Pueblo,* 679 F.2d 805 (10th Cir.1982) (holding the City of Pueblo exempt for its monopoly operation of a municipal airport).

There are some parallels between government involvement and interest in the functions of an airport and a landfill dump. The *Pueblo Aircraft Service* case, however, is readily distinguishable on its facts. The airlines and associated service industries, which make their living servicing the flying public, did not have an ownership interest in the airport itself. They utilized the airport to the degree that they were contractually and constitutionally permitted. The landfill dumps in this case, on which the plaintiffs' trash hauling businesses depend in part, are not owned by the counties, but are instead regulated under the county's police powers. The *Pueblo Aircraft Service* case would be apposite if the Tenth Circuit had handed down the same ruling, under hypothetical facts analogous to the facts of this case, in which one airline owned the airport and was authorized to collect gate fees from other airlines competing for the same passengers. In a suit alleging that an illegal price squeeze had been perpetrated by the airline owning the airport, it is implausible that the owning airline would be granted immunity from the antitrust laws. So to hold would, in effect, authorize an entity to exercise privileges with striking similarities to those of the classic 19th century trusts which inspired the Sherman Act. Of course, my comment on the result in the hypothetical case is not a comment on the merits of this case, the facts of which are in the earliest stages of discovery.

The *Town of Hallie* case, the second arrow in defendants' quiver, is simply inapposite. In that case, several surrounding towns were refused access to the city's sewage treatment and transportation facilities unless they agreed to annexation to the city. Furthermore, the city had a monopoly in the relevant market. The sewage treatment facilities in *Town of Hallie* were not operated at a profit by one company in competition with other sewage treatment "retailers" forced to use the treatment plant. Although the municipal corporations in *Town of Hallie* appear to have acted with all the fervor for property acquisition of a profit making business, the considerable responsibilities of government taken on by the annexing city were considered to be a reasonable consideration for the attainment of monopoly power over the sewage treatment market.

■ For the aforementioned reasons, I conclude that defendants' claim to a *Parker* exemption cannot be sustained. Despite the thorough and conscientious attention given by the County of Boulder to its licensing responsibilities, defendants' enthusiasm for a *Parker* exemption is mis-

placed. I am reluctant to impose a sanction for defendants' enthusiasm demonstrated at this early stage of the proceeding. The extent of Boulder's regulation of BFI's licensed landfill may well be a factor in the determination of the relevant market(s) in this case. The same can be said for the apparent lassitude of Adams County and Jefferson County. For a thorough discussion of relevant markets in the trash hauling industry, see *United States v. Waste Management Inc., et al*, 743 F.2d 976 (2d Cir.1984), *reversing* 588 F.Supp. 498 (S.D.N.Y.1983).

IT IS ORDERED that the defendants' motion for summary judgment is denied, and that the plaintiffs' motion for partial summary judgment on the issue of a state action exemption is granted.

IT IS FURTHER ORDERED that plaintiffs' motion under Rule 11 is denied.