**SEAY BROTHERS, INC., Plaintiff,**

v.

**CITY OF ALBUQUERQUE, et al., Defendants.**

**No. Civ. 83-694 BB.**

United States District Court,
D. New Mexico.

Feb. 7, 1985.

---

Rodey, Dickason, Sloan, Akin & Robb, P.A., John P. Eastham and Diane Fisher, Albuquerque, N.M., Blecher, Collins &

Weinstein, Robert G. Badal, Los Angeles, Cal., for plaintiff.

Malcolm W. DeVesty, Asst. City Atty., Albuquerque, N.M., for defendants.

Modrall, Sperling, Roehl, Harris & Sisk, Allen C. Dewey, Jr., Albuquerque, N.M., for Albuquerque Nat. Bank, deponent.

Squire, Sanders & Dempsey, Donald A. Wall, Phoenix, Ariz., for City of Albuquerque, a municipal corp., Harry E. Kinney, an individual and Mayor of the City of Albuquerque, and Frank A. Kleinhenz, an individual and Chief Administrative Officer of the City of Albuquerque.

## MEMORANDUM OPINION AND ORDER

BALDOCK, District Judge.

THIS MATTER comes on for consideration of defendants' Motion to Dismiss, filed July 15, 1983. The court, having considered the memoranda submitted by the parties, the relevant law, and otherwise being apprised fully in the premises, finds that the motion is well taken and should be granted.

Defendants move this court to dismiss plaintiff's cause of action under Fed.R. Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. A complaint is dismissed for failure to state a claim upon which relief can be granted only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Chavez v. City of Santa Fe Housing Authority*, 606 F.2d 282 (10th Cir.1979). All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true. *Mitchell v. King*, 537 F.2d 385 (10th Cir. 1976). All reasonable inferences derived from the pleadings must be liberally construed in favor of the plaintiff. *Gas-a-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102 (10th Cir.1973). Specifically applying these standards to this case, I conclude that plaintiff's complaint fails to state a claim upon which relief can be granted.

## I. *Factual Background.*

Plaintiff, Seay Brothers, Inc., is a New Mexico corporation which collects and disposes of refuse produced by commercial entities in the Albuquerque, New Mexico, area. Defendants are the City of Albuquerque, New Mexico, its mayor, Harry E. Kinney, and Frank A. Kleinhenz, the City's Chief Administrative Officer. The City, in 1977 and in 1980, enacted ordinances which prevent private refuse collectors from collecting refuse in Albuquerque. The 1977 and 1980 ordinances were designated respectively Ordinances 24–1977 and 34–1977, "City of Albuquerque Refuse Disposal System Improvement Revenue Bonds, Series May 1, 1977" and Ordinance 77–1980, "City of Albuquerque Refuse Disposal System Improvement Revenue Bonds, Series October 1, 1980."

The complaint alleges that the defendants violated the Sherman Antitrust Act, 15 U.S.C. § 2, by unlawfully monopolizing the collection and disposal of refuse within the City of Albuquerque, and forcing plaintiff to cease collecting refuse therein; that the defendants conspired with the Albuquerque National Bank in violation of 15 U.S.C. § 1; that defendants violated New Mexico antitrust statutes; and that defendants tortiously interfered with contractual relations. Plaintiff also seeks declaratory relief.

The defendants admit the essential allegations of the complaint, including the charge that the City prohibits plaintiff from collecting and disposing refuse, but claims "state action" antitrust immunity under *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Their claim of entitlement to this exemption is based on N.M.Stat.Ann. §§ 3–48–2 and 3 (1978). Section 3–48–2 provides in pertinent part:

A municipality may, by ordinance:

A. acquire and maintain refuse disposal areas or plants within or without the municipal boundary;

B. enforce a general system of refuse collection and disposal;

.    .    .    .    .

D. compel the taking of refuse to designated areas....

Section 3–48–3 provides in pertinent part:

A. a municipality may, by ordinance, provide for the collection and disposal of refuse by:

(1) the municipality;

(2) contract;

(3) any other manner deemed suitable by the municipality.

B. A municipality may appoint or contract with a refuse collector and prescribe the duties and compensation of a refuse collector.

C. A municipality may require each person owning or controlling real property to pay a reasonable fee for the collection and disposal of refuse....

D. A municipality providing for the collection of refuse may require any person owning or controlling real property to pay the refuse collection fee whether or not the refuse collection services are used by the person owning or controlling real property.

## II. *Theoretical Background.*

### A. *State Action Immunity Doctrine.*

■ The state action exemption to the Sherman Antitrust Act was first articulated by the Supreme Court in *Parker · v. Brown,* 317 U.S. 341, 63 S.Ct. 307. The Court in *Parker* held that a marketing program enacted by the California Legislature to create price supports for raisins was exempt from challenge under the Sherman Act because the program "derived its authority ... from the legislative command of the state." *Id.* at 350, 63 S.Ct. at 313. Recognizing the dual sovereignty of the federal and state governments, the Court stated:

> We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature. In a dual system of government in which, under the constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's

control over its officers and agents is not lightly to be attributed to Congress.

*Id.* at 350–51, 63 S.Ct. at 313–14.

Since *Parker,* the Court has continued to develop the State Action Doctrine. *See, e.g., Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975); *Cantor v. Detroit Edison Co.,* 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976); *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). *Hoover v. Ronwin,* —— U.S. ——, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984). In *California Retail Liquor Deals Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980), the Court summarized the elements necessary to· establish the state action exemption: "These decisions establish two standards for antitrust immunity under *Parker v. Brown.* First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the state itself." Thus, the exemption only applies where the state itself has directed or authorized anti-competitive practices in a "clearly articulated and affirmatively expressed" manner, and where the state actively supervises the enforcement of the anti-competitive regulations.

### B. *State Action Exemption as Applied to Municipalities.*

The United States Supreme Court has analyzed the application of the state action exemption to municipalities in two cases: *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978) and *Community Communications Co., Inc. v. City of Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). In the *City of Lafayette,* the Court examined whether two cities which operated utilities were exempt from the antitrust laws. Justice Brennan, writing for the plurality, concluded that cities are not necessarily exempt from the antitrust laws merely because of their status as political subdivisions of the state. He recognized that there is a "presumption against im-

plied exclusions from coverage under the antitrust laws," 435 U.S. at 398, 98 S.Ct. at 1129, in that a city must "demonstrate that there are countervailing policies which are sufficiently weighty to overcome the presumption" against an exemption. *Id.* at 400, 98 S.Ct. at 1130. The Court went on to recognize, however, that the actions of a city may be exempt from antitrust laws if it acted "pursuant to state policy to displace competition with regulation or monopoly public service." *Id.* at 413, 98 S.Ct. at 1137. The Court explained its holding by stating:

> This does not mean, however, that a political subdivision necessarily must be able to point to a specific, detailed, legislative authorization before it properly may assert a *Parker* defense to an antitrust suit.... [A]n adequate state mandate for anti-competitive activities of cities and other subordinate governmental units exist where it is found "from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of."

*Id.* at 415, 98 S.Ct. at 1138.

In *City of Boulder*, the plaintiff challenged a three-month emergency ordinance which imposed a moratorium on the extension of cable television services in Boulder. Justice Brennan, this time writing for the majority, held that the state action exemption did not apply in cases where a state merely granted "home rule" power to a city. The Court characterized such a grant of authority as one of "mere neutrality" which did not meet the requirement of a "clearly articulated and affirmatively expressed" state policy. 455 U.S. at 54–55, 102 S.Ct. at 842–843. In leaving unresolved the issue of whether a city's actions must also satisfy the test of "active state supervision," the Court stated: "Because we conclude in the present case that Boulder's Moratorium Ordinance does not satisfy the 'clear articulation and affirmative expression' criteria, we do not reach the question whether the ordinance must or could satisfy 'active state supervision' test focused upon in *Midcal*." *Id.* at 51, n. 14, 102 S.Ct. at 841, n. 14.

III. *Application of the State Action Exemption to This Case.*

A. *Clearly Articulated and Affirmatively Expressed State Policy.*

■ *Lafayette* and *Boulder* indicate that before a city is entitled to the state action exemption, there must be a clearly articulated and affirmatively expressed state policy permitting anti-competitive activity. State statutes relating to municipalities, however, are often drafted in general terms and delegate broad discretion to cities. The degree of specificity in state law required to satisfy the standard as it applies to municipalities must be resolved by the trial court on an ad hoc basis. While the Supreme Court requires that the state "authorized or directed a given municipality to act as it did," a city is not required "to point to a specific, detailed legislative authorization before it properly may assert a *Parker* defense." *City of Lafayette*, 435 U.S. at 414–15, 98 S.Ct. at 1137–38. If a challenged anti-competitive restraint is not based on a specific statutory provision, a court must then determine whether an adequate expression of state policy may be inferred from "the authority given a governmental entity to operate in a particular area" and whether "the legislature contemplated the kind of action complained of." *Lafayette*, 435 U.S. at 415, 98 S.Ct. at 1138. Thus, a state legislative policy to permit anti-competitive restraints will be inferred if the challenged action is a necessary or reasonable consequence of engaging in the authorized activity. *See, e.g., Corey v. Look*, 641 F.2d 32 (1st Cir.1981); *Cen. Iowa Ref. Sys. v. Des Moines Metro Sol. Waste*, 715 F.2d 419 (8th Cir.1983), petition for cert. filed, 52 U.S.L.W. 3441 (U.S. Nov. 18, 1983) (No. 83–825); *Hybud Equipment Corp. v. City of Akron, Ohio*, 742 F.2d 949 (6th Cir.1984). Nevertheless, mere authorization by state law to engage in certain activity will not be sufficient, standing alone, to protect anti-competitive actions of cities. *City of Boulder*, 455 U.S. at 55, 102 S.Ct. at 842.

■ In this case, the City of Albuquerque's authority to engage in the challenged

actions is not based on a specific state directive nor could it be considered a neutral grant of power. Nevertheless, N.M. Stat.Ann. §§ 3–48–2 & 3 expressly authorize cities to collect and dispose of refuse themselves, and to acquire and maintain their own refuse disposal areas. This authority is granted by statute, and, unlike *Boulder*, the City does not merely rely on its "home rule" powers. The State of New Mexico has affirmatively addressed the question of municipal refuse collection and disposal. There is a clear legislative policy regarding this industry. Thus, New Mexico's position here is not "one of mere neutrality respecting the municipal actions challenged as anti-competitive." *Boulder*, 455 U.S. at 55, 102 S.Ct. at 843.

While not specifically articulated, the New Mexico Legislature's intent to permit cities to displace competition may be inferred from a plain reading of these statutes. Such a restraint on competition is a reasonable and foreseeable consequence of the exercise of the authority granted to municipalities to collect and dispose of refuse themselves. This inference is further supported by the New Mexico Supreme Court's interpretation of these statutes. In *City of Hobbs v. Chesport, Ltd.*, 76 N.M. 609, 613, 417 P.2d 210 (1966), the court held that "[t]he authority to enforce a general system under § 14–32–3, N.M.S.A.1953, (now N.M.Stat.Ann. § 3–48–2), and the authority to establish health measures, is authority for the municipality to place garbage collection and disposal exclusively within itself." Thus, even though the statutes do not precisely address the question of whether Albuquerque could restrain trade, it may be inferred that the state legislature contemplated that the City's actions might result in displacing competition. The City's monopolization of refuse collection and disposal, therefore, is pursuant to the legislature's clear articulation and affirmative expression of state policy.

### B. *Active State Supervision.*

■ As discussed earlier, the Court in *Boulder* left unresolved the question of whether active state supervision is required where municipal conduct is involved. 455

U.S. at 51–52, 102 S.Ct. at 840–841. The circuit courts that have considered this question have held that active state supervision is not necessary where the challenged activity is within a traditional governmental function. *See Goldcross Ambulance and Transfer v. City of Kansas*, 705 F.2d 1005 (8th Cir.1983), petition for cert. filed, 52 U.S.L.W. 3039 (U.S. July 25, 1983) (No. 83–138); *Town of Hallie v. City of Eau Claire*, 700 F.2d 376 (7th Cir.1983), cert. granted, —— U.S. ——, 104 S.Ct. 3508, 82 L.Ed.2d 818 (1984). In the *Town of Hallie*, the Seventh Circuit noted that imposing such a requirement on municipalities "would erode the concept of local autonomy and home rule authority." 700 F.2d at 384. Justice Rehnquist, in his dissent in *Boulder*, also noted that "[i]t would seem rather odd to require municipal ordinances to be enforced by the State rather than by the city itself." 455 U.S. at 71, n. 6, 102 S.Ct. at 851, n. 6. Although the Tenth Circuit has never explicitly addressed the question of active state supervision, in *Pueblo Aircraft Service v. City of Pueblo*, 679 F.2d 805, 810 (10th Cir. 1982), *cert. denied*, 459 U.S. 1126, 103 S.Ct. 672, 74 L.Ed.2d 977 (1983), the court upheld Pueblo's anti-competitive conduct in the absence of active state supervision and observed that "[i]n its 'governmental capacity' a municipality acts as an arm of the state for the public good on behalf of the state rather than itself." *Contra Community Communications Co. v. City of Boulder*, 630 F.2d 704, 717 (10th Cir.1980) (Markey, J., dissenting), *rev'd*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982).

N.M.Stat.Ann. § 3–43–1(B) (1978) empowers municipalities to "perform any act and adopt any regulation necessary or expedient for the promotion of health and the suppression of disease." Clearly the manner in which refuse is collected and disposed of has a great impact upon the health of a community. The New Mexico courts have held that municipal ordinances enacted pursuant to the state statutes discussed herein involve the exercise of municipal police power which is necessary to protect the health of all members of the

community. *City of Hobbs v. Chesport, Ltd.,* 76 N.M. at 614, 417 P.2d 210; *Gomez v. City of Las Vegas,* 61 N.M. 27, 293 P.2d 984 (1956). It is unnecessary and inappropriate to rigorously apply the test of state supervision where a city is acting pursuant to its inherent police power and within the scope of traditional governmental functions. The New Mexico Legislature has given Albuquerque the power to go into the refuse disposal business itself, the power to control competition, and thus, the power to monopolize. This legislative delegation to Albuquerque to implement and supervise the operation of the monopoly is sufficient to satisfy the "active state supervision" test. The application of federal antitrust laws in this case would directly impair the ability of the State of New Mexico and the City of Albuquerque to provide for the health and safety of their citizens. I, therefore, conclude that the actions of the City of Albuquerque were authorized by clearly articulated and affirmatively expressed state policy and that there is active state supervision of the anti-competitive ordinances. Having satisfied the requirements of the state action exemption, plaintiff's Sherman Act claims against the defendants will be dismissed.

IV. *Pendent State Law Claims.*

In addition to plaintiff's federal claims, it also asserts violations of the New Mexico Antitrust Law, N.M.Stat.Ann. §§ 57–1–1, et seq. (1982 supp.) and tortious interference with contractual relations. Although a district court may hear state claims incidentally to its authority to adjudicate federal claims, pendent jurisdiction is a doctrine of ·discretion. *U.M.W. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The Court in *Gibbs* directed that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139. ·Because I will dismiss the federal claims in this suit for failure to state a claim upon which relief can be granted, I decline to consider the plaintiff's state law claims. The state law claims will also be dismissed.

NOW, THEREFORE,

IT IS ORDERED that defendant's Motion to Dismiss is granted and that plaintiff shall take nothing by its complaint.