**IDEAL WASTE SYSTEMS, INC., Plaintiff,**

v.

**PROVO CITY CORPORATION, Defendant.**

**Civ. No. C–83–0828W.**

United States District Court, D. Utah, C.D.

March 11, 1985.

Waste") was represented by William B. Bohling, Brent Bohman, and D. Miles Holman. Defendant Provo City Corporation ("Provo") was represented by Glen G. Ellis and Richard S. Daleabout. The court has considered carefully the oral arguments made, the written memoranda submitted and various authorities cited therein and now being fully advised renders the following memorandum decision and order.

## I.

The narrow issue before the court is whether Provo City's Solid Waste Management Ordinance is exempted from the application of section 2 of the Sherman Act because it falls within the state action exemption.

## II. Factual Background

Plaintiff Ideal Waste is a Utah corporation engaged in the business of solid waste collection, transportation and disposal. Defendant Provo City is a Utah municipal corporation similarly engaged in solid waste disposal. The cross motions for summary judgment contest the applicability of the state action exemption to Provo's Municipal Solid Waste Ordinance.

Plaintiff Ideal Waste and its predecessor, Parker, have been in the business of collecting and hauling garbage from within Provo City for several years. Provo's attempts to limit commercial waste collection business within its boundaries have been the source of previous litigation between Provo and Parker, Ideal Waste's predecessor. *Parker v. Provo City Corporation*, 543 P.2d 769 (Utah 1975). In that case, the Utah Supreme Court held that Provo did not have the power under its statutory authority to prohibit the collection of garbage by commercial haulers as the ordinance did not bear a reasonable relation to public health.[1] In 1981, the Utah legislature enacted the Utah Solid Waste Management Act, Utah Code Ann. §§ 26–32–1 to 26–32–5. In 1982, Provo City amended its ordinance to prohibit the collection, remov-

William B. Bohling, D. Miles Holman, Brent A. Bohman, Salt Lake City, Utah, for plaintiff.

Richard S. Dalebout, Provo, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter involving the application of the state action exemption to Provo City's Solid Waste Management Ordinance comes before the court on cross motions for summary judgment. Oral argument was heard before the court on February 8, 1985. Plaintiff Ideal Waste Systems, Inc. ("Ideal

---

1. Provo had claimed its powers were based on the provisions of Utah Code Ann. § 10–8–61 (1953). The text of that statute is printed *infra* at footnote 5.

al or disposal of garbage or waste matter on a commercial basis but allowed for the collection and disposition of waste paper and paper products by a "licensed scavenger." During this time, plaintiff Ideal Waste began serving commercial firms (including an auto repair business, retail tire sales business and auto repair business) which generated only a minimal amount of "garbage" or waste. Provo City contacted Ideal Waste's customers and informed them that by doing business with Ideal Waste, they were in violation of Provo's ordinance and that they would be charged by Provo City for waste collection services. In March, 1983, Provo's attorney informed Ideal's general manager that Ideal was violating the ordinance as it was collecting garbage and waste in addition to the waste paper and paper products it was licensed to haul as a licensed scavenger. Provo did not make a determination that Ideal's collection activities presented any health danger. In June 1983, plaintiff Ideal filed suit against Provo.

In July, 1984, Provo repealed its existing waste collection ordinance and enacted Ordinance No. 0–84–042, entitled "Provo City Solid Waste Management Ordinance" (hereinafter referred to as "the Ordinance") which is the subject of these motions for summary judgment. The ordinance grants Provo the exclusive right to collect, transport and dispose of *putrescible* solid waste. Commercial haulers, such as the plaintiff, may only collect, transport and dispose of *non-putrescible* solid waste. A private hauler may collect, transport and dispose of all solid wastes, whether putrescible or non-putrescible, generated at its own structure. Brigham Young University, located within Provo, is a private hauler and collects both putrescible and non-putrescible waste which it does not separate but collects and hauls together. All solid waste generated within Provo must be deposited in a solid waste facility managed by Provo.[2] Although a commercial hauler may charge any rate it chooses for its services, the

ordinance requires that a written description of services and charges be filed with Provo ten days before the charges take effect and may not be amended more often than once each thirty days. Moreover, charges are to be the same for all customers receiving the same service (regardless of cost differentials in transporting the waste to the disposal site) and charges for any class of service shall not be less than the actual cost of providing those services. Under the ordinance, Provo may lower its charges to meet competition from commercial haulers but may not charge less than the lowest rate charged by a commercial hauler. A commercial hauler may not enter into a contract with a customer that lasts longer than 90 days.

### III. Discussion

A. The narrow issue presented by these motions is whether Provo City's waste disposal ordinance is exempt from attack under section 2 of the Sherman Act because it falls within the state action exemption.

The question of whether a state exercising its sovereign powers is prohibited under the federal antitrust laws from imposing certain anticompetitive restraints was first addressed in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In *Parker*, the appellee was prevented from freely marketing his raisin crop by a price maintenance program adopted by the State of California. The Supreme Court held that the program did not violate the Sherman Act, emphasizing that ours is a "dual system of government" and finding nothing in the Sherman Act to suggest the act was meant to restrain a state from acting pursuant to its legislature.

The issue of whether a municipality would also be exempt from the antitrust laws under the *Parker* reasoning was considered in *City of Lafayette v. Louisiana Power and Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). In that case, the court rejected the claim that

**2.** Ideal Waste does not dispute the requirement that it deposit its waste at the Provo-managed facility.

"Congress never intended to subject local governments to the antitrust laws," 435 U.S. at 394, 98 S.Ct. at 1127. The plurality went on to state:

> Cities are not themselves sovereign; they do not receive all the federal deference of the States that create them. *Parker's* limitation of the exemption to 'official action directed by a state,' is consistent with the fact that the States' subdivisions generally have not been treated as equivalents of the States themselves. In light of the serious dislocation which could result if cities were free to place their own parochial interests above the nation's economic goals reflected in the antitrust laws, we are especially unwilling to presume that Congress intended to exclude anticompetitive municipal action from their reach.

435 U.S. at 412–413, 98 S.Ct. at 1136–1137 (footnote and citations omitted).

The Court then established two standards for antitrust immunity under *Parker v. Brown*. First, the challenged restraint must be "one clearly articulated and affirmatively expressed as state policy;" second, the policy must be "actively supervised" by the state itself. *Lafayette*, 435 U.S. at 410, 98 S.Ct. at 1135. Those standards have since been adopted by a majority of the Court. *New Motor Vehicle Board v. Orrin W. Fox Co.*, 439 U.S. 96, 109, 99 S.Ct. 403, 411, 58 L.Ed.2d 361 (1978); *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980). Recently, the Court applied the *Lafayette* standards when examining an emergency city ordinance enacted by the City of Boulder, Colorado, which prohibited the petitioner cable television company from expanding its business for three months while the city rewrote its cable television ordinance. In that case, *Community Communications Co. v. Boulder*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), Boulder contended that it was enti-

tled to the state action exemption because the ordinance was within the city's authority as a home rule municipality. But the Court found the Home Rule Amendment to the state constitution insufficient, stating that "the requirement of 'clear articulation and affirmative expression' is not satisfied when the State's position is one of mere *neutrality* respecting the municipal actions challenged as anti-competitive." *Boulder*, 455 U.S. at 55, 102 S.Ct. at 843.

The Court in *Boulder* gave scant attention to the respondents' arguments that denying the Parker exemption in the Boulder case would have "serious adverse consequences for cities" and would "unduly burden the federal courts." *Boulder*, 455 U.S. at 56, 102 S.Ct. at 843. The Court instead pointed to Congress' longstanding commitment to an economy based on competition in the market place which it had embodied in the antitrust laws and reiterated that:

> the '[a]ntitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise. They are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms.'

*Boulder*, 455 U.S. at 56, fn. 19, 102 S.Ct. at 843, fn. 19 *quoting United States v. Topco Associates, Inc.*, 405 U.S. 596, 610, 92 S.Ct. 1126, 1134, 31 L.Ed.2d 515 (1972). *Boulder* left open the issue whether a municipality must also show that its actions were "actively supervised by the State" as had been suggested by the plurality opinion in *Lafayette*. *Lafayette*, 435 U.S. at 410, 98 S.Ct. at 1135.[3]

The foregoing cases make clear that in order for a municipal ordinance to be exempted from challenge under the antitrust laws, the municipality must be able to point to a "clearly articulated and affirmatively expressed" state policy to displace

---

**3.** The Supreme Court has recently granted certiorari in a Seventh Circuit case which held that municipalities need make no showing of supervision by the state in suits challenging "tradi-

tional municipal functions." *Town of Hallie v. City of Eau Claire*, 700 F.2d 376, 383–84 (7th Cir.1983), *cert. granted*, —— U.S. ——, 104 S.Ct. 3508, 82 L.Ed.2d 818 (1984).

competition with regulation or monopoly public service. *Lafayette*, 435 U.S. at 413, 98 S.Ct. at 1136. Moreover, not only must the city show the existence of affirmative legislative action to exempt its action from the antitrust laws, *Pueblo Aircraft Service v. City of Pueblo*, 679 F.2d 805, 809 (10th Cir.1982), but also that the legislature contemplated the types of actions alleged to be anticompetitive. *Id. See also, Golden State Transit Corp. v. City of Los Angeles*, 726 F.2d 1430, 1433 (9th Cir.1984). This circuit has recently stated that "it is not necessary to point to express statutory mandate for each act that is alleged to violate the antitrust laws," but rather it will be sufficient "if the activity in issue is found to be clearly within legislative intent." *Pueblo Aircraft*, 679 F.2d at 809.

B. In the present case, plaintiff Ideal Waste challenges Provo's ordinance as violating Section 2 of the Sherman Act because of its "price fixing, horizontal market division and predatory reprisal" characteristics. Specifically, Ideal contends that the ordinance's distinction between those allowed to carry putrescible and non-putrescible waste and those who can collect and dispose only of putrescible waste is not premised on public health concerns but rather on economic concerns. Because it is precluded from serving customers generating any putrescible waste, the plaintiff contends that it cannot compete against the defendant for customers generating only non-putrescible waste. In addition, the plaintiff challenges the ordinance's provisions requiring that a commercial hauler's prices be posted with the city, the 90 day limit on contracts and the provision requiring that all services be charged at the same rates irrespective of cost differentials.

The Utah statutory scheme that addresses municipal authority in solid waste management is comprised of two statutes:

Utah Code Ann. § 10–8–61 (1953), and Utah Code Ann. §§ 26–32–3 to 26–32–5 (1984). Provo relies on the language of Utah Code Ann. §§ 26–32–3 to 26–32–5 (1984), the Utah Solid Waste Management Act, (hereinafter referred to as the "Waste Management Act") to demonstrate the state's policy to displace competition. The language of the following subsections of § 26–32–3 of that Act is of particular relevance.

Subject to the powers and rules of the department, the governing body of each public entity may:

(1) supervise and regulate the collection, transportation, and disposition of all solid waste generated within its jurisdiction;
· · ·
(5) levy and collect taxes, fees, and charges and require licenses as may be appropriate to discharge its responsibility for the acquisition, construction, operation, maintenance, and improvement of solid waste management facilities or any portion, thereof, including licensing private collectors operating within its jurisdiction;
· · ·
(7) control the right to collect, transport, and dispose of all solid waste generated within its jurisdiction;

(8) agree that the sole and exclusive right to collect, transport, and dispose of solid waste within its jurisdiction shall be assumed by any other public entity or entities, any private persons or entities, or any combination thereof, pursuant to Section 26–32–4; [4]

Based on the foregoing statutory provisions, a city may "supervise," "regulate," "license" and "control the right" to collect, transport and dispose of all solid waste [5] generated within its jurisdiction. Although the language of subsection 8 is ambiguous due to confusion over what is modified by the phrase, "pursuant to Sec-

---

**4.** Section 26–32–4 provides for long-term agreements for joint action between two or more public entities to construct, acquire, own, etc. solid waste management facilities.

**5.** "Solid waste" is defined in Utah Code Ann. § 26–32–2(1) as meaning "all putrescible and

nonputrescible materials or substances discarded or rejected as being spent, useless, worthless, or in excess to the owners' needs at the time of discard or rejection, including but not limited to garbage, refuse, industrial and commercial waste . . . "

tion 26–32–4", the section can be read as permitting a city to limit the right to collect, transport and dispose of solid waste. When considered as a whole, the statutory language supports the contention that the legislature acted affirmatively to give municipalities a variety of powers in the waste disposal arena. In so doing, the legislature could also have contemplated that anticompetitive actions might result or be the natural consequence of that statutory grant of authority. *See Gold Cross Ambulance & Transfer v. City of Kansas,* 705 F.2d 1005, 1012–13 (8th Cir.1983). This court does not need to decide, however, whether the provisions of the Waste Management Act satisfy the requirement of a "clearly articulated and affirmatively expressed" state policy to displace competition because the second part of the state action exemption test is not met here; namely, there is no showing that the legislature contemplated the types of actions alleged to be anticompetitive here. *See Pueblo Aircraft Service,* 679 F.2d at 809. The Court bases that conclusion on two alternate prongs: (1) an analysis of Utah's statutory scheme demonstrates that a municipality's control over waste disposal must be done pursuant to public health goals and; (2) the means chosen by Provo to maintain its monopoly power cannot be sanctioned.

 One cannot read the Solid Waste Act without referring as well to the Utah Code Ann. § 10–8–61 (1953) ("Section 10–8–61").[6] The Utah Supreme Court has interpreted that section as requiring that a city's regulation of garbage disposal must bear a reasonable relation to the public health.[7] Rules of statutory construction mandate that statutes be construed consistently with one another when possible and that a subsequent inconsistent specific provision should be construed as an exception to an earlier general provision.

Section 10–8–61 was in effect at the time the Solid Waste Act was enacted and has not been repealed. Section 10–8–61 addresses a municipality's general powers to regulate commercial waste haulers and to collect and dispose of waste generated within its area. It does not demonstrate any clearly articulated and affirmatively expressed state policy to displace competition. The Solid Waste Act encompasses both a municipality's power to cooperate with other municipalities in waste management responsibilities as well as its solitary powers to regulate, supervise, license and control waste disposal. When the two statutory provisions are considered together, it is clear that a municipality must act pursuant to public health reasons when "regulating," "supervising," "licensing" and "controlling" the collection, transportation and disposal of solid waste. Accordingly, in order to demonstrate that the legislature "contemplated" the types of actions alleged to be anticompetitive in Provo's ordinance, Provo must show that they bear a rational relationship to public health concerns. Provo has not made this showing.

The court does not find that the distinction between putrescible and non-putrescible waste which is the basis for the classifi-

---

**6.** Utah Code Ann. § 10–8–61 (1953) states:

Regulations to prevent contagious diseases—Quarantine—Garbage disposal. They may make regulations to secure the general health of the city, prevent the introduction of contagious, infectious or malignant diseases into the city, and make quarantine laws and enforce the same within the corporate limits and within twelve miles thereof. They may create a board of health and prescribe the powers and duties of the same. They shall not, however, by any ordinance, contract, rule or regulation, prevent or seek to prevent any person from transporting thoroughfares garbage, kitchen refuse or the by-products of the business of such person or from selling or otherwise disposing of the same, except under such uniform and reasonable regulations as the board of commissioners or city council may by ordinance prescribe for the removal, hauling and disposal of the same, and they shall not grant to any person the exclusive right to collect or transport through the streets or public thoroughfares any garbage, kitchen refuse or by-products, but they may prescribe, by ordinance, that any garbage, kitchen refuse or by-product which may be deemed deleterious to the public health may be taken by the city and burned or otherwise destroyed by it.

**7.** *Parker v. Provo City Corp.,* 543 P.2d 769, 771 (Utah 1975).

cation between Provo City and commercial haulers is based on public health reasons. Provo City collects and disposes of both putrescible and non-putrescible waste in much the same manner as Ideal Waste. There has been no contention that Ideal's equipment or services are sub-standard nor that Ideal Waste is incapable of hauling putrescible waste. Private haulers such as Brigham Young University are not required to separate putrescible and non-putrescible waste. Nonetheless, under the ordinance, a commercial hauler is banned from collecting even minimal amounts of putrescible waste such as may be found in a discarded lunch sack. The court can find no public health reasons that justify that distinction.

It is clear that several provisions in Provo's ordinance are concerned with economic profitability and are not prompted by public health reasons. The requirement that prices be posted with the city before they go into effect, the 90 day limits on contract lengths, and the provision authorizing Provo to lower prices to meet competition are examples of those profitability concerns. Provo states that these provisions were adopted to prevent what it considered to be predatory pricing and unfair and discriminatory forms of competition on the part of Ideal Waste. But Provo also justifies its actions as being necessary to maintain its own profitability. Provo contends that its profits from its commercial customers are necessary to subsidize its residential customers and states that if it does not operate profitably, it will not be able to maintain the level of readiness necessary to fulfill its public health obligations. The Supreme Court, however, has previously rejected attempts to distinguish between profit seeking aims of private entities and public welfare objectives of public institutions. The Court in *Lafayette*, 435 U.S. at 403, 98 S.Ct. at 1131 stated ... "the economic choices made by public corporations in the conduct of their business affairs,

designed as they are to assure maximum benefits for the community constituency, are not inherently more likely to comport with the broader interests of national economic well-being than are those of private corporations acting in furtherance of the interests of the organization and its shareholders." Furthermore, there are other options available to Provo to assure that competitors operate fairly.

█ It could perhaps be argued that this court could develop a special "rule of reason" for local governments which would require weighing the public interest in displacing competition in a particular situation against the general policy favoring competition.[8] But the nature of the anticompetitive restraints in question here cannot have been contemplated by the legislature even if it authorized the displacement of competition without regard for public health considerations. The sanctioning of anticompetitive results does not justify all means to achieve those results. *See Corey v. Look*, 641 F.2d 32, 37 (1st Cir.1981).

In summary, the state action exemption is inapplicable to Provo City's Solid Waste Management Ordinance as the court finds that the Utah legislature did not contemplate the kinds of restraints sanctioned by Provo's ordinance.

Accordingly,

IT IS HEREBY ORDERED that:

1. The plaintiff's cross motion for summary judgment denying the applicability of the state action exemption is granted.

2. The defendant's motion for summary judgment is denied.

---

**8.** That analysis might conceivably be based on a statement by the Court in *Boulder*, 455 U.S. at 56 n. 20, 102 S.Ct. at 843 n. 20, that reserved the question whether "certain activities, which might appear anticompetitive when engaged in by private parties, take on a different complexion when adopted by a local government."